We'll hear argument next in Case 12-5196, Law v. Alfred H. Siegel, Chapter 7, Trustee. Mr. Hellman. Thank you, Mr. Chief Justice, and may it please the Court. Congress expressly prohibited what the Bankruptcy Court did here. Under Section 522K of the Code, Congress specified that a debtor's exempt property his homestead, his pension, his wedding ring, is not liable for the payment of, quote, any administrative expense. Excuse me, will you crank up your thing? I can't hear you quite well enough. That's good. Thank you. Congress in Section 522K specified specifically that a debtor's exempt property is not liable for any administrative expense. The Bankruptcy Court was not free to override that express and specific prohibition in the name of equity, a point that has been clear for at least 80 years since this Court's case in Ginsburg and Sons. Instead, Congress made the judgment that debtors and their dependents, even dishonest debtors, ought not be deprived of their exempt property, such that they would emerge from bankruptcy as wards of the State. Instead, Congress authorized other serious punishments for debtor misconduct. But arguments for punishment that the Code forbids must be addressed to Congress and not the supposed equitable discretion of the Bankruptcy Court. Now, if I could, I'd like to say to you, Mr. Hellman, I'm just somewhat taken aback by your constant reference, your repeated references to wards of the State. What we're talking about is whether your client gets $75,000. Do you think everybody who doesn't have $75,000 is a ward of the State? This is his last $75,000, Your Honor. Yeah. Well, do you know what the median net worth of a household in the United States is? It's about — I'm not sure what the median net worth is. It's less than $70,000. So the question here is not whether he's going to be a ward of the State. The question is whether he's going to be above the median in his assets. Well, I think what's going on here, Your Honor, is actually a Federalism principle. Congress recognized in 522 that States, in effect, would be the ones who would have to take care of those who do not have a home, do not have tools of trade, do not have a pension. And so what 522 does is it says that if a State authorizes you an exemption and you claim it and it becomes exempt, then you get to keep it through bankruptcy law, because otherwise, in effect, it is the State that ends up being required to house or support or help those and their dependents who are deprived of essentially their last dollar, which is what is exactly the case here. Here, every — all of Mr. Law's creditors in this case have been paid off. The trustee has already received approximately $280,000. We're just talking about literally, literally the last $75,000 and all of it that would be going to the trustee. Ginsburg. I don't follow that, because I thought that $75,000 would go to satisfy part of the claim, that there would still be the legal fees unpaid. All his creditors, the debts that existed beforehand. But the trustee, who is obliged to try to find what assets he or she can, spends a huge amount of money in order to prove that this claim of a second mortgage was false. And there should be — so what happens, then, on your theory, that all that money was spent and the result is that the second mortgage is canceled, the creditors are satisfied, nobody pays the legal expenses, is that? Well, the first $280,000 have been satisfied, and the trustee was not obligated by any law to pursue the administration of the estate in a way that would be cost ineffective. But our point here is that Congress had made the determination. We could have — there could be a policy discussion, of course, about whether exempt property ought to be allowed to go to the administrative costs of the estate or to pre-petition creditors in situations in which the court finds litigation misconduct. But that is not the judgment Congress made. What was the trustee supposed to do? Suppose the trustee has a meter running on his desk, and he's hot in pursuit of this phantom lily-lin of China. But we get to the point where he's down to the — he says, well, if I do any more work, the only way I'm going to get paid is out of this $75,000. I'd better stop, because otherwise I'm going to be working free. What should he do? Well, the trustee in that situation and the trustee handbook, pages 4-3, 4-4 of the trustee handbook that the United States Office of Trustee puts out, notes that administrators in the state ought to assess whether or not pursuing a claim will be an effect — will yield an effective return for the estate. And again, Congress made the judgment that when a debtor lies to a court, he loses his discharge. And that has an effect on the debtor's obligations going forward. It means that the debtor's pre-petition debts, to the extent they're unsatisfied, stay with him for the rest of his life. But Congress did not say a denial of discharge allows the trustee to recover anything more than it otherwise would. So, again, I think the question is one of policy, and one of the policy where Congress has spoken clearly. The text of — Sotomayor, can we talk about that policy? Yes, Your Honor. I mean, it would seem to me that a court sanctioning power is among one of the most respected and longstanding powers. So putting aside the government's reliance on the statutory scheme, I don't see it. But how about the inherent power? Well, inherent power — I mean, you want to read a preclusion of the inherent power out of — not from an express term, but implicitly. No, Your Honor. Just — I should note, of course, inherent power was never argued below nor presented in the bio. But I think the more important response to your question is the following. We are not talking in this case about the inherent power to sanction a litigant. This — we don't dispute that Rule 11 exists and other punishments exist under the statute. This case is about a court saying the property from which that sanction can be satisfied. Out of what property can that sanction be paid or forced to be paid? And there are other — You are talking about the inherent power. You're saying a court in an inherent power can't use that property. That's what you're saying. My point is that there is no longstanding tradition of the same vein of a court being able to sanction, to be able to say you owe attorney's fees for this bad conduct. That's not what this case is about. This case is about the property out of which that sanction can be paid. And Congress spoke specifically. And when Congress speaks specifically, this Court recognized in NASCO, in Nova Scotia, and in a long line of cases beforehand, and in the Article III context, no less, in the Article III Court, this Court recognized that where Congress speaks expressly, a court does not have the inherent power or otherwise to reach the contrary results. And I think the Ginsburg case is quite on point here, because the facts of that case were striking even today. There in Ginsburg, the debtor was a corporation, and an officer of that corporation was seeking to flee the jurisdiction with corporate cash, funds of the corporation. A creditor went to the bankruptcy court and said, we need to detain this person, arrest him. He's fleeing with property of the estate. This Court said the arrest writ was not valid. Why? Because the bankruptcy code specified the situations in which arrest was authorized. Conditions A, B, and C needed to be satisfied. This was situation D. And the creditor adverted to the general equitable powers of the bankruptcy court, which were codified then as now in a provision, and this Court said no. The specific provision that's at stake here, at issue here, means that the equitable provision, the general equity, cannot overcome that. And in fact, Ginsburg was a less clear case than this one. The arrest provision in Ginsburg was framed affirmatively. You may arrest if situations A, B, and C are here. And the Court said you can't add situation D to that. This is a case not by implication, but an express prohibition. Exempt property is not liable for the payment of any administrative expense, save in two situations. It wasn't even as if Congress said that you could. Kennedy, your position is, is that the trustee can take no action to make the estate whole in the event of, say, Justice Alito's type of hypothetical. The bankruptcy estate, bankruptcy trustee spends $125,000 in legal fees to bring property back to the estate that had been concealed by wrongful conduct of the debtor. And the debtor still gets $75,000 of that? There's nothing the bankruptcy trustee can do to make the bankruptcy estate whole? Well, of course, and as was the case here, there was a denial of discharge. It's the classic and serious penalty for debtors who engage in misconduct before a bankruptcy court. Now, what that means in almost every case is that there will be debts owed to pre-petition creditors that remain unpaid. It's essentially the bankruptcy death penalty in the sense that it makes the debtor liable for the rest of his days until those debts are paid off. That's a very serious penalty. But what about the House? The House is still exempt, because if they levy on the House, they go back to bankruptcy and it's still exempt. So there's nothing you can do to make the trustee the estate whole. Well, two points, Your Honor. One, the question to where you want to draw the line about deterring debtor misconduct and leaving debtors without literally their last dollar coming out of bankruptcy is an important question, but a policy question, and one where Congress has spoken with an express prohibition. Now, there are other sanctions, none of which were levied here or sought to be levied here, Rule 11 and the like, that might serve to provide an additional source of funds, but not from exempt property, because Congress has walled that off. If one looks at the same thing is true of certain retirement funds. Yes, Your Honor. So if, in fact, a person has $4 million in the special retirement fund account and he's behaved in the most extraordinarily dishonest way, the trustee has no power to impose a sanction on those funds, even if he'll earn a big income, he's lied nonstop, et cetera. Congress has amended Section 522 already eight times since 1978, about once every four and a half years, if my math is correct. To fine-tune the extent to which debtors can claim exemptions. As the Court's aware, in 2005, for example, the Congress limited the extent to which a debtor could claim an exemption in his homestead, I suppose precisely for analogous reasoning to what Your Honor suggests. It's still nonetheless perfectly clear from Section 522K that Congress has not created or allowed some sort of free-floating equitable discretion for bankruptcy courts to reach a different result in cases. And again, I'd like to point the Court to Section 522C as well, which is the companion provision to the administrative expenses provision. As the Court, of course, is aware, debtors often have debts arising from all sorts of improper conduct, willful and malicious injury, criminal restitution awards, fraud, embezzlement. There's a whole list of these things in Section 523, and the Code makes these debts non-dischargeable, inherent per se non-dischargeable, meaning that when you go through bankruptcy, you're not going to be able to escape paying these debts once the bankruptcy is over. However, in Section 522C1 of the Code, Congress picked out just two, just two of those categories of debts, alimony and certain tax liability, of these non-dischargeable debts that could be satisfied from exempt property. The debtor who has a wrongful death judgment, the debtor who has a fraud judgment, the debtor who has a criminal restitution award, all of those debts are non-dischargeable. They stay with the debtor until they're paid, but they're expressly not paid from exempt property. That is a quintessential policy judgment of Congress's, to decide where to draw the line between deterring, not making bankruptcy a haven for those who seek to avoid their misconduct or engage in misconduct, but at the same time recognizing that taking someone's homestead, taking someone's homestead, in effect, with respect, does leave them without a home and essentially. Sotomayor, when he takes that $75,000 and assuming he doesn't pay debts with it and he invests it, what happens to the income on that investment? Is that exempt, too, from paying off his creditors? It's actually even less friendly to the debtor than that, Your Honor. Under California law, and Federal law takes State law exemptions as it finds it, contrary to Federal provision, the debtor, if you ever were to receive the $75,000 by law, California law, would have 6 months to reinvest it in a homestead. That's what California is doing. It's saying, we're going to give you the opportunity to reinvest and have a home. If it's not reinvested, it's not exempt, at least not for purposes of the Federal scheme going forward. If it doesn't retain its exempt character, then if he puts it in the bank account that's not exempt, the interest and the principal, both of those are available to satisfy any creditor who might be out there to whom he owes funds. That's California, but that's not necessarily every other State. Those States that give a homestead exemption, and that's 48 of the 50, with the exception of Pennsylvania and New Jersey, which use the Federal homestead exemption, all of those, the vast majority of those States have a reinvestment principle. I know Illinois does. I know that several other States do as well. For just the reason that Your Honor suggests, this money is not put away in a box or such that it can't be touched again. The homestead exemption represents an opportunity for the debtor to have a home, and that's what California law protects and California, in its judgment, decided to award. Ginsburg. Are you saying that he must spend the $75,000 on a new residence in within how many period of time? 6 months, Your Honor. 6 months, and if at the end of 6 months he can't find a home at that price, then what happens? The California law says it needs to be reinvested within 6 months in a homestead, otherwise it loses its exempt character. I'm not sure if there's any sort of waiver law that could be. My understanding is 6 months is the time that he has, and that's California's decision. The Federal law doesn't have a contrary provision that would. And then if 6 months runs, he hasn't purchased a new home, then the $75,000 goes where? It is available to his creditors. But they've been paid already. That's right. And the way bankruptcy, Congress has chosen to make the Bankruptcy Code work is that absent any sort of special award, when Congress has made the determination that a debtor is not liable for his administrative expenses once the bankruptcy case closes, even if there has been a denial of discharge, Congress has determined that although a debtor will be on the hook for the debts that he brought into bankruptcy, he will not be on the hook for debts arising from the administrative expenses going forward, because I think Congress understood that those expenses might be out of the debtor's control and that a debtor ought not lead bankruptcy in a worse condition. Ginsburg. So then he gets, then what you said before, needs to be modified. He does get to keep this $75,000 because there's no creditors to be paid off from. The $75,000 is not protected from any creditor who might have a claim to it. That's all I meant to suggest, Your Honor. In this case, his creditors have, in fact, been paid off, and there is no sanctions award or other award that would put him at risk. Kennedy. When you say paid off, do you mean paid off 100 percent? The his primary creditor was a judgment creditor who had a debt of $160,000, negotiated it down to $120,000 in exchange for being paid first, and I do mean 100 percent, yes. Roberts. So what you started with, that, oh, this is a terrible sanction, he's denied a discharge and all that, that doesn't mean a thing to him, does it? Because everybody's paid off. He actually doesn't have any debts. This debtor does not have any remaining debts. Most debtors, however, because of the way the priority scheme works in bankruptcy, will be paying their administrative expenses first and have their debtor, their obligations come second. And, of course, if there's a non-dischargeable debt, as I said, then even without a finding of non-dischargeability, they'll stay going forward. And I want to emphasize again that we are not talking here the – my friends on the other side suggest that this is sort of from a deep tradition of the inherent power of a court to sanction. This is not about that power. This is about the property from which a sanction award can be paid. There is no tradition supporting that award. And, of course, as this Court said in Owen v. Owen, where the code is clear, and I don't think, with respect, it could be much clearer than saying not liable for any administrative expense, save in two situations, not present here, that is the code, that is the language that controls. Roberts I should know this, but who's going to get stuck with the extra couple hundred thousand dollars? Is that the trustee in an individual capacity or someone else? Fisher It's really the trustee's law firm, which is an arm of the trustee and they don't recoup that from anywhere else, right? They're on the hook for that? That is correct, Your Honor. That is correct. Now, the primary authority that the primary authority that my friends on the other side use to support their reading of the statute is the Murama case. And I want to emphasize that that case does not support the proposition that bankruptcy courts can violate specific provisions of the code if they believe equity warrants another result. In Murama, the court was the Murama majority was clear to note that no provision of the code expressly forbid the result that the court was going to allow, and that 105, section 105 in that case, was being used to accomplish something the code permits and to do it promptly rather than in a delayed fashion. This case is not about prompt versus delayed. This is about doing what the code expressly forbids. This case is not about what section 105 allows. This case is about what section 522 expressly forbids. And here Congress has made the judgment, considering all the different deterrent mechanisms and policy interests at play, Congress has made the judgment that administrative expenses are not liable for any administrative exempt property is not liable for any administrative expense. In the Malley case, Justice Souter said that if this is not what section 105A was intended for, I take it you just think he's flatly wrong. We do disagree, Your Honor. The equities in that case are, I suppose, are sharper in the sense that the debtor is leaving bankruptcy with more money than he otherwise would be able to have, but it's just as clear in that case that Congress has not made the exception that it's more than — more than — this is not a negative implication case. I want to stress that. It's not just that Congress hasn't put this on the list of things that can't be done. Congress has a flat-out prohibition the structure is not liable for any administrative expense or any prepetition debt, save in the enumerated circumstances. So, yes, with respect, I do think Malley was wrongly decided. And this Court need do nothing more than reaffirm what it has done for 80 years, which is to say that 105 gives bankruptcy courts the power to act. It's — our position is quite modest. We're only saying they can't do what the code forbids. Where the code is — where they're acting interstitially, where they're acting to carry out express provisions of the code, of course that's what 105 does. The Scholar's brief that is submitted on our side, on pages 21 to 26, lists a bevy of practices that will — that should and will continue unabated because they — under section 105 by bankruptcy courts to carry out the administration of justice, because there are things that the code does not expressly forbid. Mr. Hellman, K, of course, talks about exempt property. Yes. Is there a possibility of reading the statute such that the exemption just never comes into effect? If you look at 522L, L says unless a party in interest objects, the property claimed as exempt is exempt. Now, that suggests that if the party in interest does object, there's a question about whether the party claimed as exempt is exempt. So why isn't it a permissible reading of the statute to essentially say the court gets to decide whether this is exempt property such that K comes into effect, and can decide in whether it's exempt property, it can take into account the Petitioner's abuse of process? Two points. Of course, no objection was ever lodged within the time period that rule was used. Yes. I completely agree with that, but suppose one were. That objection would not be well founded because it is undisputed that Petitioner is entitled to his homestead exemption under California law, which California laws, this is his home, he's lived there for the requisite amount of time, he has the rights, the equity, all of that. Congress later, in provisions that wouldn't apply to this case either, put some limits on a debtor's ability, Federal limits on a debtor's ability to claim his homestead exemption. If money is poured into the home before declaring bankruptcy, Congress cut back on that a little bit, and I suppose you could have an objection on that basis. But this was not a case in which the Petitioner lost his exemption because he wasn't entitled to it. To the contrary, at page 69A of the appendix, the Court observes this is the exemption to which he's otherwise entitled, but the Court found that his litigation misconduct warranted taking away what he was otherwise entitled to under Section 522L and protected by K and C. Alitoso So you're saying a creditor could not have objected when your client claimed the exemption on the ground that the exemption is going to prevent the discovery the disclosure of the fraudulent nature of this mortgage. A creditor could not have objected to the exemption on that basis? The objection was proper. So the answer to your question is yes. No objection would have been proper in that situation. Because Why is that? Because Section 522, the way it works is that the question is, are you entitled to the exemption under State law? That's what Section 522B, I believe, asks you to look at. And then there's a question of is an objection going to be interposed within the period provided by Section 522L. Congress, of course, is free to create other limitations on a debtor's ability to claim exemptions. And as I said, they have done that in Section 522O, Section 522P, Section 522Q, which deals specifically, by the way, with situations in which the very filing of the bankruptcy case is an abuse of the code. And in that case, in Section 522Q, Congress ultimately decided that for debtors whose fraud and it's convicted of a felony whose filing of the case shows that it's an abuse of the code. Congress decided in those cases that a debtor should not lose all of his exempt property. They put a cap in at $155,000, which, as Your Honor points out, is quite generous, quite generous given the median income of the American family, and further stated that exemption could be tilted upward to where necessary to support the debtor and his dependents. Not downward, no discretion to go downward, but can go upward if necessary in the So Congress had so your question was, could there have been an objection? The answer is no. And I would just say in passing that Congress has decided and has amended the statute several times to fine-tune exactly when it is, there ought to be or could be an objection to property validly claimed as exempt under State law. This is not one of those cases. Far from it. And again, I want to stress this is not an argument from negative implication. This is not an argument from interstices. This is an argument from express and categorical prohibition. And if there are no further questions, I'll reserve the balance of my time. Roberts. Thank you, counsel. Thank you. Mr. Cotthill. Thank you, Mr. Chief Justice, and may it please the Court. The facts explain why the Bankruptcy Court exercised its discretion appropriately under both Section 105a and the longstanding inherent power of the Court. Mr. Law committed a massive fraud on that Court with the fake Lilly Lee mortgage and fake documents. Petitioner lied repeatedly to the Court and then lied about his lies, all in an attempt to retain non-exempt property, inequity in his home and contravention of the Code. Section 105a was made for a case like this. It provides ample authority for what the Bankruptcy Court did, both in its first sentence, which uses a sweeping formulation of any order necessary or appropriate, as well as its second sentence, which gives Bankruptcy Courts, quote, the broad authority to take any action that is necessary or appropriate to prevent an abusive process. That is the language Murama used to describe the second sentence, and it fits here perfectly. Sotomayor, I'm sorry. Sotomayor, my problem is that I read the sentence and it lops off its beginning. What the beginning says is, no provision of this title, providing for the raising of an issue by a party of interest, can stop a court from doing that, an abusing process, presumably. So how could a party legitimately, whether the trustee or anyone else, make any claim to the exempt property? How can the court do something neither the Bankruptcy Code nor any of its provisions permit the trustee to do? Justice Sotomayor, for precisely the reasons that both Murama and Justice Souter in the Malley case suggested, which is that the second sentence fortifies. That's the strongest argument that Justice Souter agrees with. Well, it's that the second sentence fortifies the first. That is the way to understand the power of the court and the orders that are necessary and appropriate. One such power is to remedy fraud upon the court, the abusive process. That's what Congress used. My problem is that the Code itself doesn't do that. It limits the access to the exemption to specified frauds, to frauds that result in a conviction. To amounts, it doesn't permit the exemption. It does away with the exemptions for an amount above 155. So if the Code doesn't permit full recovery for fraud, why should a court be permitted to do it? Well, of course, that provision wasn't in effect at the time that's 522Q, which you're referring to. But we think 522Q doesn't isn't violated here. Absolutely, you're right, Justice Sotomayor. If there were a violation of 522Q, 105A couldn't take that back. But the language of 522Q, which is found in the blue brief at page 19A of the appendix, just says that if there's a circumstance of a felony, it doesn't even mention fraud, but if there's a felony that occurs and in the filing of the petition, then it says that you can't get more than, you shall not exceed $156,000. It says nothing about the longstanding power of the court to depart downward and to give up to zero. It's just like a punitive damages cap. So Florida's punitive damages law says that if you're the victim of medical malpractice or something, you can get up to $500,000. Your reward shall not exceed $500,000. But, of course, that doesn't take back the power of the FactFinder to say you shall get nothing in a particular case. And this is a perfect illustration of a case in which a debtor should get nothing. Mr. Law tried to invoke the protections of the Code while he repeatedly defied the obligations under the Code at every turn. Sotomayor, would you answer Justice Breyer's question? Does this power go to invading the other exempt properties like an IRS? I'm assuming there are now invasion provisions for an IRS, but would this power permit the court to invade an IR – not an IRS, an IRA. Thank you. An IRA. Our argument here is just limited to this type of case in which you're lying about the underlying asset itself and trying to seek an exemption. I know the Solicitor General advances a broader argument, and I suppose that the case of the court can deal with that in an appropriate case. But here, Mr. Law undervalued his home and put all of these fake mortgages on and then repeatedly submitted perjured documents to the court about the very exemption. And as Justices Ginsburg and Alito said before, what's a trustee to do in that situation except investigate? That's his duty under Section 704, to try and figure out what has happened. Well, he doesn't have to investigate to the tune of half a million dollars chasing a much smaller amount that's at issue. Well, I think, Mr. Chief Justice, that's the wrong way to look at it, with all respect. For one thing, of course, the trustees' actions allowed title to be cleared and the underlying house to be sold for $680,000, paying off all the creditors. If Mr. Law's representations were accepted, and this is something the bankruptcy court found at page 77, the trustee would have had to abandon the property altogether. That's $680,000 that nobody would have gotten. So that's the first thing. And the second thing is, of course, that when the trustee started his investigation and realized it was a fake mortgage, he would have never thought that this would have become, as you said, a half-million-dollar case. He would have thought, well, look, these documents prove this is a fraud. But what Mr. Law did in response was to take 19 separate appeals to, you know, 14 to the Bankruptcy Appellate Court, five to the Ninth Circuit. I mean, you know, I looked at the United States. Breyer, I believe very badly, and in view of this, I agree with that, why wouldn't the or why couldn't the trustee simply sanction it? I mean, you have apparently the authority here in 105 to sanction a conduct abusive of the judicial process. That includes an order directing payment of expenses. Okay, I guess this is an expense. And that wouldn't be discharged because it's a postpetition debt. So why not just do that, and even if he doesn't have money now, if he ever gets any, he's going to have to pay it. So it looks as if there's an alternative way of paying for this. Two responses. First of all, of course, the existence of an alternative sanction, I think this Court in Chambers is very clear in saying that doesn't displace other powers of the Court. No, it doesn't. But why when you have pretty clear language saying this shall not be used for administrative expenses? Because for you have general language over here saying a general power to sanction and you have an alternative way that's perhaps almost as good, why read the language that says no to say, well, yes? I want to respond to why there isn't an express prohibition in a minute, but just taking your point before. The reason is the facts of this case. That is, the sanction would only be paid out of postpetition debt. And I think there's a pretty good reason why my friend's brief on the other side is willing to entertain sanctions and the like, because he would engage in the same type of conduct that he has now, repeatedly stymieing the Court and the ability to try and get that $75,000 sanction should it ever be imposed. And so that — so sanctions come from postpetition assets, and that's, I think, one of the problems. Now, with respect to your bigger question, is there a prohibition somewhere in the code, we don't think there is. We don't think 522K says anything like what my friend said in his opening sentence, that this is somehow an express prohibition. We think that the language of 522K has to be read against three different things. The first, Section 105A and its sweeping language. Second, something you never heard a word about in my friend's argument on the other side, which is the longstanding presumption that the protections of the bankruptcy code are meant for the honest but unfortunate debtor. And third, language in 522, which Justice Kagan alluded to, which suggests that someone is not entitled to the right of an exemption and the Court can take it back if the Court can refuse to provide it in the first place. Breyer, if he has the exemption, K says property that the debtor exempts under this section is not liable for payment of any administrative expense. That's why I thought it seemed fairly definite, no, unless you read the general language and tradition to mean, yes. I think you have to read the language of 522K, which was enacted in 1978, against the fact that Section 105A was on the books and indeed enhanced in 1978. Kagan I think that's a little bit backwards, right? Doesn't 105 exist to the extent that there's no prohibition saying otherwise? And then 522K comes in and there's your prohibition. Katyal No, because I think in order to understand what the prohibition was, you have to look to 105A. That is, what 105A does is it says in general you have this power, and indeed 522K I think speaks of the general case in which there isn't this type of excessive bad faith fraud on the court. And so absolutely, I think in general, just as in Murama itself, there's general language which says administrative expenses normally aren't liable. But in a typical case, to use Murama's words, a case like this, in which the only way the code would work and functionally work is to incentivize trustees to try and uncover the fraud. Kagan So then you're saying essentially that every provision in the bankruptcy code ought to be read with an addendum that says, except if there's an abusive process? Katyal Your Honor, I think that's what generally both the Hunt prohibition and indeed the first line of Murama says, which is that the basic idea of the bankruptcy code is to provide honest but unfortunate debtors a system of relief. And it misses the forest for the trees to essentially look with tunnel vision just at K. K exists within a larger framework of background duties and obligations that a debtor must comply with. A debtor can't come in and say, oh, I've just met 522. It presupposes they've already met, for example, 5 § 521, which is a truthful disclosure of assets and liabilities. And if you adopt Mr. Law's formulation, you're essentially saying that the main safeguard against this type of abuse, the trustee, is left holding the bag at the end of the day. The trustee is the only one here who acted, I think appropriately, trying to uncover all of this. And he would be stuck with hundreds of thousands of dollars in attorney's fees. Breyer. Couldn't the bankruptcy judge just deny him bankruptcy? You can deny him bankruptcy, but that doesn't solve the underlying problem that Mr. Law would still have $75,000 in assets that he is trying to seek under his exemption, and the trustee has spent hundreds of thousands of dollars trying to unravel that scheme. Sotomayor. How do you limit, in a principled way, you say where you differ with the Solicitor General, is that if an IRA had existed here, they would say that could be used. And you're saying I don't need to go that far. That's on the facts. But on what theory would you limit recovery in those situations? Or the court's inherent power? Well, we're not advocating for a limit, but I suppose if one, if the court wanted to find one, they'd find it in Chambers itself, which said that the inherent power of the court is something that could be exercised sparingly and only in extreme cases. And if there is a situation in which, you know, some sort of forfeiture was a massive amount compared to the underlying fraud on the court, that wouldn't be appropriate, that would be reviewed under abuse of discretion. All we're suggesting here is that's hard to enforce. Every lawyer's case is an exceptional case. I mean, that's just the way it works. Well, but I think that's a problem that with Chambers itself, Justice Kennedy, and I think the courts have figured out ways to deal with that problem by saying it's only reserved for the exceptional case. And this is really, truly that case. This isn't just fraud on the court. It's fraud on the court squared. They're lying about the lies themselves. And the bankruptcy court can't work, it can't function, if you don't have the trustee incentivized to undertake the kind of investigation that occurred here. My friend talks about denial of discharge or criminal penalties being ways to try and deal with this. But all of those sanctions depend on the action of the trustee to uncover the fraud in the first place. And when you have someone like Mr. Law, who's a serial liar to the court, this isn't just bad faith, Justice Kennedy. This isn't just, you know, one document that is wrong by $5 or $10. This is repeated perjury to the court. And that is the quintessential thing Section 105 is about when it talks about abusive process. If you don't permit equitable forfeiture here, you are essentially giving effect to Mr. Law's abusive process with respect to the underlying laws of the citizen. Breyer, Think of a bankruptcy Petitioner who in part has a debt arising towards a creditor that consisted of the most frightful conduct you can think of. I mean, something really awful that he did to somebody. And yet, that debtor can be excused, bankrupt, and keeps the $75,000. Now, while lying to a bankruptcy trustee is bad, it's not hard for us to think of conduct that's far worse, and yet he can keep the $75,000. Why should this particular form of bad conduct allow the invasion of the homestead? For two reasons, Justice Breyer, because Section 105a, as well as the inherent power of the Court, deal with specifically this type of situation, abusive process fraught on the Court itself. Not any type of pre-petition conduct or anything like that. It's targeted to this. And of course, the language in 522Q, which we were talking about earlier, is only about that pre-petition conduct. It doesn't have to be so – absolutely, Congress is free, if they want, to abrogate 105a or the inherent power of the Court and to say, look, if you've engaged in bad faith, fraught on the Court, whatever, you're still entitled to your exemption. That's not what it says. To the contrary, and this picks up on Justice Kagan's point earlier, 522L and B provide a mechanism to reject an exemption that is being sought. And here, that happened. 522L says, and this is laid out in our brief at pages 38 and 39, if someone raises an objection to an exemption that a debtor is seeking, that exemption can be denied. Ginsburg-Miller I thought the objection had to be raised by a creditor within a certain time. I thought, isn't there a provision that says, and if there's no objection, the exemption is what is claimed? Katyala, it's 522L doesn't say that. It refers to a party in interest, which could be a trustee as well. And so here we think both the trustee objected in filing the motion for – in 2006, as well as the Court itself. Section 105 has to be read alongside 522, and it provides the Court the sui sponte power to do so. There is a time limit, Justice Ginsburg, in Rule 403, but that time limit can itself be extended if, under the terms of the rule, if there's been a subsequent amendment of the underlying schedule. And here we think, effectively, there was a subsequent amendment of the underlying schedule. That is, Mr. Law lied. And I think there's a very strong reason why the time limit shouldn't apply here. Imagine that a debtor took a fake set of exemptions and bribed the trustee to look the other way for 30 days. If that were discovered on day 45, I think it would be thoroughly implausible to think that you could – that the debtor could get the underlying exemption, something that he bribed and lied about, just because it didn't meet the 30-day requirement. Ginsburg. Maybe you get it from the trustee. I think that it might be able to go after the trustee as well, but I don't think that the underlying exemption would be given in that circumstance. It's a paradigmatic instance of both the 105A power as well as the inherent power of the Court. Kennedy. I recognize the problem that if you have sanctions that he can't pay the sanctions and you're right back where you started. But are there cases in which there are sanctions imposed of an amount such as $75,000 to $100,000? Sure. There's been a number of cases. The red brief talks about them at page 32, going all the way back, in which the exemption has been denied altogether for purposes of bad conduct, and we think this case falls within that heartland. Mr. Hellman said that a creditor and I guess any other party could not object to the exemption on the ground that the House was burdened with a fraudulent mortgage. Do you agree with that? I don't. I don't think anything in the language of 522L so restricts it. There are other provisions in the Code which say if an objection has been made, for example, to a creditor under Section 502, that the Court's power to deny the relief is circumscribed in nine different ways. But there is no restriction on the power of the Court here, and that's why I think Justice Kagan's question gets at this point, which is 522K assumes that an exemption has been given, and there's a strong reason under the Code the Court has given the power to deny an exemption in the first place. Do you have any authority that says that there could be an objection on that basis? I think just the text of 522 itself says so, if there are no other questions. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to start, if I could, by taking a little bit of a step back to note that outside of the bankruptcy system, an individual who runs up more debts than they can satisfy with their collective assets has no right to wipe out those debts while retaining some of their property in the face of unpaid assets. That right only comes from the bankruptcy code itself, but you only get that right if you follow the rules of bankruptcy. The Petitioner asks this Court to myopically focus on certain provisions of the code and only provisions of the code that actually benefit the debtor. But you have to look at any provision of the code in the context of the whole code itself, because all the provisions are intended to work together. In this case, the surcharge order was necessary and appropriate to enforce provisions such as Section 521 and Section 704 of the code. Section 521 imposes duties on debtors. Those duties include the duty to honestly disclose assets and liabilities, the duty to turn over property to the estate, to the trustee, and the duty to cooperate with the trustee throughout the case. Now, Mr. Law flouted all of those obligations, making it impossible to carry out the provisions of those parts of the code without surcharging him in some way. Section 704 imposes duties on the trustee. Those duties include the duty to investigate the financial affairs of a debtor and the duty to collect the property of the debtor, reduce it to money, and give that money to creditors. Now, the trustee doggedly pursued his duties under Section 704, but because of Mr. Law's bad faith litigation behavior, he imposed a great cost on the exercise of those duties. And so the Bankruptcy Court exercised its discretion to try to offset some of those costs, but it did not overcharge on what would have otherwise been, excuse me, exempt property debtors. Kagan, you clearly have the facts on your side. The question is whether you have the law. And 522K says, as Justice Breyer said, property that the debtor exempts under this section is not liable for payment of any administrative expense. Now, as I read your brief, you're essentially asking us to put the word usually in that provision. Is not usually liable. When is it liable? It's liable when there are special circumstances dealing with debtor dishonesty. And where does that come from? Well, what we're asking you to do is look at all the provisions of the code together. And certainly Section 522K expresses Congress's policy judgment that generally honest debtors should not have their exempt property used to pay administrative expenses. But as I've said, 521 and 704 express Congress's policy judgments about what debtors are supposed to do and what trustees are supposed to do. And Section 105 gives bankruptcy courts authority to address very unusual circumstances that involve bad faith litigation conduct. So that's bad conduct in the litigation. I think that is an implicit exception to most of the general rules that are laid out in the Bankruptcy Code. In this case, it's really impossible for the court to have carried out all of the provisions of the code, but that's directly because of the debtor's behavior, in this case Petitioner's behavior. And so here in this extraordinary circumstance, the Bankruptcy Court addressed that bad faith litigation behavior by exempting what otherwise would have been by, excuse me, surcharging what otherwise would have been exempt property. Roberts. You do have good facts on your side, but what if the offense is simply the failure to list a particular asset? Does that justify a departure from the usual rule? I mean, if it's a negligent failure to list the asset, then I don't know. No, you know, it's a bank account that's held in the, you know, separate name or it's a, I don't know, separate real estate, the kind of, it's fairly common for debtors to leave off some assets they want to conceal. Is that, as a general rule, sufficient to justify this unusual authority? I think if they do it in such a way that then they spend the asset. So the way this issue usually comes up, the way it's come up in most of the courts of appeals, is that a debtor tries to hide a non-exempt asset and then wastes the asset in some way, usually by spending it. And then when it's discovered, this is how it came up in the Malley case in the First Amendment, where the bankruptcy court surcharges the exempt property to sort of compensate the estate for the wasted non-exempt property. And so I think that's certainly, in our view, an appropriate exercise of authority under Section 105, because there the debtor is trying to he doesn't necessarily exit the bankruptcy with more money than he would be entitled to, but he has more money during the bankruptcy and he spends that money and he's. Roberts. Roberts. Well, then it becomes a not very unusual exercise of authority. It becomes pretty common since the concealment of non-exempt assets is a fairly I don't want to say it happens all the time, but it's a fairly common situation. I don't think it happens terribly often. And when it does happen, it isn't very often that the debtor spends the money that he's concealing. He's usually trying to keep the money. And so if it's discovered that he has hidden an asset that he should have turned over, then the bankruptcy court can merely order him to turn over the money, to turn over whatever the asset was. It only, it's only necessary to surcharge what would otherwise be exempt property if that non-exempt asset no longer exists. Here, of course, it's a little bit of a different situation. This Petitioner imposed enormous costs on the estate, radically depleted the value of the estate by requiring the trustee to run up huge attorney's fees in order to effectuate his duties under the code. Breyer, is there any case law on, because the 522 says, in B, it says the following property may be exempt. It doesn't say it has to be. So is there any case law where the debtor writes down, you know, a piece of property, and a creditor comes in and says, he can't exempt that, he's behaved outrageously. And it fits within the category, but he's behaved outrageously. Is there any case law that says under those circumstances the trustee, the bankruptcy judge can refuse the exemption? One or the other? None that I'm aware of. In our view of the case, it's not so much that the exemption was denied in this case, but that they. Breyer, you see, I mean, you first have to get to the thing where the we're pretending to put the creditor, the bankruptcy judge, as if he were another creditor. The name, the property appears on a list. It says exempt. And then the trustee or the judge says, no, I'm not going to let you exempt it. And that's basically what he's done. Well, so, right, so our view of the case is that it's not so much that there's been an objection to the exemption, so much as the exemption has been disallowed at the end of the case or surcharged. But I'm glad, you know, in the hypothetical you posit, it's the creditor who's expending effort and potentially incurring attorney's fees in order to expose a debtor's fraud. And in that case, those would not be administrative expenses, and you would think that under the at least under the Court's inherent authority under the, as discussed in the first instance. It not only is administrative expenses, but you have to somehow say, well, the judge is a constructive creditor, and he constructively objected, and there are an awful lot of constructives in that sentence that I just gave you. Right. And again, that's not our view. Our view is that the exemption was disallowed, that the debtor is not allowed the benefit of the exemption. But if the creditor had been the one who ran up the attorney's fees, he could certainly be paid under the Court's inherent authority, as in Chambers v. NASCO. And it would be strange to think that the trustee is the only person who couldn't be paid in this sort of circumstance just for doing what the Code tells him he has to do. Ginsburg. Ms. Harrington, at the third stage in this case, the government suggested a distinction between two situations. One, an action by the debtor to remove property from the estate, leaving the creditors unsatisfied. And that's when you say this power, the exemption can be taken away. And then the other side was where the creditors are paid in full and only the trustee's litigation expenses are at issue. Are you dropping that distinction? No, Justice Ginsburg. I think the distinction we were trying to make was more as what I was discussing with the Chief Justice, which is when a debtor wastes non-exempt assets and can't turn them over, a non-exempt property, can't turn it over to the estate, and so then he is forced to turn over exempt property so that the surcharge doesn't pay attorneys' fees. It just compensates the estate and, by extension, the creditors for property that should have been turned over. Our suggestion was that this case, you could decide this case on a narrow grounds and it wouldn't necessarily resolve the issue in those other cases. Because in this case, the sanction was to pay attorneys' fees, which under a court's traditional inherent authority, a court can order one party to pay another party's fees in response to extraordinary bad faith litigation conduct. Now, even in Chambers v. Nasco, it's true that the Court was divided in that case, but it was mostly divided about whether the bad faith in that case was in the litigation or before the litigation. Here, there's really no doubt that all of the bad faith conduct in this case is in the litigation, and that's really a very traditional exercise of a court's inherent authority to sanction that type of behavior through attorneys' fees. I think it's important to note also in this case that the available remedies really are insufficient to deal with this debtor's misconduct. He suggests dismissal, discharge, and Rule 11 sanctions. Of course, dismissal wouldn't do anything to punish him because his creditors have been paid and he would just exit the bankruptcy with all of the exempt property he would have gotten if he had been honest. Same thing with discharge. His he was denied a discharge of his debts, but then after that, the trustee sold his house and it sold for $300,000 more than he had represented it was worth, and so all of his creditors were paid. And so that really had no practical effect in this case. It's also not clear that Rule 11 would be sufficient to fully compensate the trustee for the expenses that have been incurred, because Rule 11 sanctions generally aren't available for matters on appeal. And as the record reveals, much of the expenses that were incurred in this case, in this case, resulted from the debtor's more than a dozen appeals to the Bankruptcy Appellate Panel and to the court of appeals. Kagan I'm not sure I understand that. Are you saying that the Court could not just have fined him, let's say, $100,000 or however much he wanted, whatever the costs were, and that he could get that out of the debtor's future earnings? So our view is that he could have the Court could have imposed a sanction, and that would not have been a pre-petition debt, so it wouldn't have been discharged. And if the Court had ordered the debtor to pay the money on pain of contempt, he could have enforced that order, notwithstanding any State law provision that would have exempted the property after the bankruptcy. Thank you, counsel. Mr. Helman, you have 5 minutes remaining. Thank you, Your Honor. Just a few brief points in rebuttal. I think from the litany of punishments that the government has pointed to in this case, the question here is not whether a bankruptcy court can sanction a dishonest debtor. It can. The question is what sanctions has Congress forbidden or allowed? This is a case in which Congress has drawn a line and said exempt property may not be used to satisfy any administrative expense. My second point is that I think there may have been some confusion about what it is to claim an exemption under the Bankruptcy Code. If you look at Section 522B of the Code, what you'll see is that a debtor is allowed to claim an exemption, may claim an exemption, under State law or Federal law, depending on the scheme that the State has opted into. The right to the exemption is a product of State law unless Federal law says otherwise. And Federal law has started to say otherwise in the Bankruptcy Reform Amendments of 2005. Congress saw a problem in 2005 where debtors were pouring money into their homesteads, then declaring bankruptcy, and then seeking to have all of that property be claimed as exempt. Congress amended Section 522 to deal with that problem, to place limitations on that type of misconduct. Congress has not created a generalized equitable discretion exception to Section 522. And I suggest that the reason it has not done that is because we're talking about exempt property, the core property of the debtor. And it would dramatically shift the power between trustee, as the Chief — as Mr. Chief Justice was suggesting, dramatically shift the power between the trustee and creditors and the debtor if a debtor's homestead, pension, wedding ring, or other exempt property becomes fair game and at issue if the trustee makes a motion to suggest that the debtor hasn't behaved as forthrightly as the trustee claims he should have. And I want to stress again, at the risk of repeating myself, we are not talking about the traditional, venerable, inherent powers of the Court to award attorneys' fees. There's a Rule 9011 in the Bankruptcy Code, wasn't invoked here, shouldn't have been invoked here. But what we are talking about instead is the property from which that sanction can be satisfied. Congress has determined that exempt property cannot be used to satisfy administrative expenses, the worst pre-petition conduct that one could imagine, save in a couple of narrow circumstances. Congress has made the choice here as to the status of exempt property. In the Ravlax case, in the Ginsburg case, and I'm not aware of any case of the contrary in between, Congress — the rule in this Court is the specific provision controls. Here, Congress has spoken specifically, expressly, not by implication, but through prohibitive language, saying that exempt property is not available to satisfy administrative expenses. For those reasons, we would ask the Court to reverse the surcharge order. Thank you. Roberts. Thank you, counsel. The case is submitted.